HARLOW H. ROGERS, trustee, *vs.* WILBUR H. POWERS.
WILBUR H. POWERS *vs.* HARLOW H. ROGERS & another.

Suffolk. November 18, 1909. — January 7, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Way*, Private, by grant. *Deed*, Construction.

A right of way is extinguished when the same person becomes the owner of both the servient and the dominant estates.

The foreclosure of a mortgage avoids a grant of a right of way by a deed of the mortgagor made after the mortgage.

The holder of a mortgage of real estate, including three lots numbered 3, 4 and 5 and a right of way connecting these lots through other lots numbered 1 and 2 with a highway called Crest Avenue, executed a release to the mortgagor of the lots numbered 4 and 5, describing them by metes and bounds, and adding, "also a right of way ten feet wide along the northerly and easterly side of the premises connecting with the way to Crest Avenue." After the habendum clause, the deed of release provided as follows: " But this release shall not in any way affect or impair my right to hold under the said mortgage and as security for the sum remaining due thereon, or to sell under the power of sale in said mort-

gage contained, all the remainder of the premises therein conveyed and not hereby released." After receiving the release of lots 4 and 5 their owner conveyed those two lots to one R. " with a right of way ten feet wide, seventy-five feet long, on the northerly side of the granted premises." Lots 1 and 2 abutted on Crest Avenue. Lot 3 was back of lots 1 and 2, and lots 4 and 5 were successively back of lot 3. By a petition in the Land Court the subsequent owners of lots 4 and 5, claiming under R., sought to establish their title to a right of way by grant over lot 3 and lots 1 and 2 to Crest Avenue. The respondent, who owned the lots 1, 2 and 3, held his title to lot 3 under a foreclosure of the mortgage mentioned above. *Held,* that the release of lots 4 and 5 from the mortgage, which also released the right of way along the side of the released premises, did not release from the mortgage the right of way over lot 3 or grant any right of way over that lot or lots 1 and 2, and therefore that R. acquired no such right which could have passed to the petitioners.

In determining whether a right of way has been created by grant the rule, sometimes applied, that instruments made at the same time between the same parties and concerning the same subject matter may be taken together to ascertain the intent with which they were made, does not permit this court to attempt to discover and give effect to a conjectured intention of the parties interested in five adjoining and successive lots of land, over three of which a right of way is claimed for the benefit of the other two, by construing together all the deeds and mortgages which have been made at different times by different parties and with different objects, having nothing in common except the fact that they refer to one or more of the five lots.

TWO PETITIONS, filed in the Land Court on December 18, 1908, as described below.

With the petitions was filed a plan, a reduced copy of which is printed on page 259.

The cases were heard together by *Davis,* J., who made the following decision, in which the facts are stated :

" These two petitions for registration of title to land on the west side of Winthrop Shore Drive, formerly called Crest Avenue, in the town of Winthrop, involve the same matter of controversy, and were tried together. All of the properties came out of what was formerly lot F on a plan of land in Winthrop on the west side of Crest Avenue. This lot F became subdivided into five smaller lots, of which, what will hereafter be designated as lots 1, 2 and 3, fronting on Crest Avenue, have been acquired by Powers ; lot 4, immediately in the rear of lot 3, and separated from Crest Avenue by the three Powers lots, has been acquired by Rogers, and lot 5, in the rear of the Rogers lot, has been acquired by the respondent Hurd. The Rogers and Hurd lots claim a right of way over the Powers lots to the street.

"Title to the whole of the original lot F was in George E. Rogers in December, 1887, who proceeded to erect three cottages, one on lot 1 at the southeast corner of the land on Crest Avenue, one on lot 2 at the southwest corner of the land, and one on lot 3 in the rear of lots 1 and 2. Access from lot 3 to the street was provided over a walk which led down about half way between the cottages on lots 1 and 2.

WINTHROP SHORE DRIVE

"March 14, 1888, Rogers mortgaged lot 1, with a provision for a five-foot passageway on the southerly side thereof for the benefit of those abutting on said way and those purchasing any of the rear portion of lot F. On March 17 Rogers mortgaged lot 2, with a similar provision for a five-foot passageway on the northerly side thereof. These two mortgages were recorded on June 23, 1888, and subsequently were discharged. No rights of way were therefore acquired under them, but they are mentioned in and explain subsequent deeds.

" May 20, 1888, Rogers mortgaged, to one Wadsworth, lots 3, 4 and 5, granting in said mortgage the 'free use of a ten-foot right of way between the two houses now built on the Easterly part of lot F, to Crest Avenue.'

" June 23, 1888, Rogers transferred to his wife, through one Rich, lot 1, subject to a five-foot passageway on the southerly side thereof for the benefit of abutting estates, including the lots in the rear ; on the same day, by separate deed, lot 2, subject to a similar right of way over the five-foot strip on the northerly side thereof ; and on the same day, also by a separate deed, lots 3, 4 and 5, with a right of way ten feet wide to Crest Avenue. These transactions, while apparently creating three separate lots, with rights of way to Crest Avenue, would all have merged in Mrs. Rogers but for the Wadsworth mortgage.

" On May 3, 1889, Mrs. Rogers conveyed to Rich the two rear lots 4 and 5 ' with a right of way ten feet wide, seventy-five feet long, on the northerly side of the granted premises.' After that deed was dated and acknowledged, but before it was recorded, Wadsworth executed to Mrs. Rogers a partial release from his mortgage of the land described in her deed of May 3 to Rich (of lots 4 and 5) and ' also a right of way ten feet wide along the northerly and easterly sides of the premises connecting with the way to Crest Avenue.'

" May 15, 1889, Mrs. Rogers deeded to Rich, who was then the owner free from incumbrances of lots 4 and 5, lot 3, with the free use of a ten-foot right of way to Crest Avenue, ' between the two houses now built on the easterly side of lot F,' and subject to a right of way over said way ten feet wide along the northerly side of the granted premises for the benefit of lots 4 and 5, the title to which last-named lots was already in Rich.   No release was obtained of lot 3, however, from the Wadsworth mortgage, and that mortgage was subsequently foreclosed.  Title to lot 3 under that foreclosure is now held by the petitioner, Powers.

" In October, 1889, Mrs. Rogers sold lot 1 to one Page, subject to a five-foot passageway along its southerly side for the benefit of abutting estates.  Page, however, blocked access to this passageway from the rear land, so that no rights have been acquired by prescription.

" All of the land was beach land, open and unfenced, and

people travelled over it without much regard to streets or property lines. All of the original cottages were destroyed in the fire at Winthrop of 1907, but a new house has been erected on the Powers lot, No. 2, the piazza and steps of which project over the former way or walk ten feet wide which lay between that lot and lot 1.

"Actual access to the rear lots 4 and 5 has been across lots from the south over the unfenced lands of others, or along other land of the petitioner Powers, to the north of lots 1 and 3, but no rights of way have been thus acquired. Rich sold lot 4 in 1890, subject to a right of way ten feet wide along the northerly side of it for the benefit of lot 5.

"The petitioner, Powers, admits that there was a passageway between lots 1 and 2 for the benefit of the rear land, but contends that, so far as lot 3 is concerned, this right of way was extinguished by merger when the title to lots 1, 2 and 3 came together in him; and that, so far as the Rogers and Hurd lots 4 and 5 are concerned, the right was lost when Mrs. Rogers, in conveying those lots to Rich on May 3, 1889, granted, or attempted to grant, a right of way over the granted premises itself instead of over her remaining land between lots 4 and 5 out to Crest Avenue; and that by the partial release from the paramount Wadsworth mortgage, under foreclosure of which he, Powers, now holds title to the intervening lot No. 3, there did not pass, either by express or implied grant, or by necessity, any right of way to Crest Avenue. If the partial release can, and should, be construed as granting a right of way to the street, it is through the words 'connecting with the way to Crest Avenue.'

"I think and rule that, under the deed to Rich of May 3, 1889, and the partial release from the Wadsworth mortgage, there was created in favor of the Rogers and Hurd lots a right of way ten feet wide along the northerly and easterly boundaries of the Powers lot numbered 3, and thence out to what was formerly Crest Avenue over a strip ten feet wide, lying five feet on each side of the boundary line between lots 1 and 2. (See *Lipsky* v. *Heller*, 199 Mass. 310.) The Rogers lot is subject to a right of way ten feet wide along its northerly boundary line in favor of the said Hurd lot.

"Decree accordingly."

A decree was entered in accordance with the foregoing decision, from which Wilbur H. Powers, being the respondent in the first case and the petitioner in the second case, appealed to this court.

*H. H. Folsom*, for Wilbur H. Powers.

*F. Rogers*, for Harlow S. Rogers and George W. Hurd, submitted a brief.

SHELDON, J.   The only question to be determined in these cases is whether there is a right of way by grant over the land of Powers, being lots 1, 2 and 3 on the appended plan, in favor of the lots of Rogers and Hurd, being lots 4 and 5 on the same plan.   No question is made but that there is such a right of way by necessity.   The answer to this question depends upon the construction and effect of the deeds which have been put in evidence.

Rogers and Hurd can claim no right of way by grant by reason of any provisions in the mortgages given by Rogers on March 14 and 17, 1888.   These mortgages have been discharged and have become inefficacious for any purpose.   Nor can Rogers and Hurd maintain their claim under any of the deeds which attempt to create rights merely as between the owners of lots 1, 2 and 3, for all such rights have become.extinguished by the unity of possession and of title acquired in these lots by Powers.   *Atwater v. Bodfish*, 11 Gray, 150.   *Carbrey v. Willis*, 7 Allen, 364. They can make no such claim for the same reason under any of the deeds by which in June, 1888, George Rogers through Rich conveyed to Mary E. Rogers his wife all of these lots in succession, although they fully describe the right now claimed.   The easement was extinguished when she became the owner of both the dominant and the servient estates.   *Atwater v. Bodfish, ubi supra.*   It cannot be claimed under the language of the deed given by Mrs. Rogers to Rich on May 3, 1889.   The right of way given by that deed was only on the northerly side of lots 4 and 5; it was not so long as the northerly boundary of those two lots, and could not overlap that boundary or extend even into lot 3.   Her deed of lot 3 to Rich, given May 15, 1889, cannot avail them; for the foreclosure of the Wadsworth mortgage has wholly avoided and made null all the effect of this deed, and the title to lot 3 under this foreclosure is now held by

Powers. Her deed of lot 1 to Page is also of no avail for this purpose; apart from the fact that Page blocked access to this passageway from the rear land, as apparently he had a right to do except perhaps as against the owners of lot 3, this right of way was only for the benefit of abutting estates, that is for lots 1, 2 and 3, all of which are now owned by Powers.

The only claim which Rogers and Hurd can now make to hold this right by grant is under the partial release given to Mrs. Rogers by Wadsworth of his mortgage. This was dated May 13, 1889, but was actually given before Mrs. Rogers delivered to Rich her deed to him of lots 4 and 5. By this partial release Wadsworth released to her, in the ordinary form, all the right, title and interest which he acquired under his mortgage in lots 4 and 5, describing them by metes and bounds, and adding: "Also a right of way ten feet wide along the northerly and easterly sides of the premises connecting with the way to Crest Avenue." After the habendum to Mrs. Rogers, the release provides as follows: "But this release shall not in any way affect or impair my right to hold under the said mortgage and as security for the sum remaining due thereon; or to sell under the power of sale in said mortgage contained, all the remainder of the premises therein conveyed and not hereby released." The petitioners Rogers and Hurd contend that this instrument did not bring about merely a partial release of the Wadsworth mortgage without more, but that it operated as a grant to Mrs. Rogers of the right of way therein described and also over the "way to Crest Avenue" therein mentioned, and that this right passed to Rich by Mrs. Rogers's deed of May 3, 1889, although not mentioned therein, and now can be enforced against all who, as Powers does, claim under the Wadsworth mortgage.

In our opinion this contention cannot be sustained. In form, the release is nothing more than an ordinary partial release of a mortgage; it purports to do nothing more than to leave the parties exactly as if lots 4 and 5 had not been included originally in the mortgage; and to make this plainer, the mortgagee also releases the right of way along the sides of the released premises. This is the reasoning of the court in *Wyman* v. *Hooper*, 2 Gray, 141, 146; *Grover* v. *Thatcher*, 4 Gray, 526, 528, and *Wolcott* v. *Winchester*, 15 Gray, 461. This is not like a

conveyance of the mortgaged property made by the mortgagee to a third person. *Welch* v. *Priest,* 8 Allen, 165. *Stark* v. *Boynton,* 167 Mass. 443, 445. Moreover, Mrs. Rogers at this time, subject to the Rogers mortgage, owned the whole of lots 1, 2, 3, 4 and 5. Any easement upon any of these lots in favor of the others that she might acquire would, as we have seen, subject to that mortgage, become extinguished by her very acquisition. She could indeed in her conveyances of these lots create any new easements such as she might choose, subject to the rights of Wadsworth and those claiming under him ; and in this deed to Rich she did attempt to give to him a limited right of way on the northerly side of lots 4 and 5, which is immaterial here. But we cannot infer that she intended to create for his benefit an additional easement which she did not mention and for which it does not appear that he stipulated. *Feoffees in Ipswich* v. *Proprietors,* 174 Mass. 572. It is rather to be inferred that both parties intended that he should be restricted to the way of necessity which is conceded to exist.

We cannot attempt to discover and give effect to a conjectural intention of the parties interested in these lots to create this right of way, by construing together all the deeds and mortgages which have been made at different times, by different parties, and with different objects, having indeed nothing in common except that they refer to some one or more of the five lots with which we are concerned. That would be very different from the rule declared in some of our decisions that instruments made at the same time between the same parties, and concerning the same subject matter, may be taken together to ascertain the intent with which they were made. *Cloyes* v. *Sweetser,* 4 Cush. 403. *Porter* v. *Sullivan,* 7 Gray, 441, 446. *Lipsky* v. *Heller,* 199 Mass. 310, 315.

The decree of the Land Court must be reversed and a decree must be entered declaring that the owners of the Rogers and Hurd lots, numbered 4 and 5, have only a right of way by necessity over the Powers lots 1, 2 and 3, which, as we understand, all parties now desire to have located and defined by the Land Court.

*So ordered.*