## JOSEPH A. HURD *vs.* GENERAL ELECTRIC COMPANY.

Essex.    May 22, 1913. — June 18, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON &
DE COURCY, JJ.

*Equity Pleading and Practice,* Appeal.    *Way,* Private.    *Deed,* Construction.

On an appeal to this court from a final decree dismissing a bill in equity, where
a memorandum made by the trial judge was before this court, in which after
stating his findings of the material facts he stated that he drew a certain infer-
ence as to the intention of the parties to a certain deed in which the description
of a right of way was ambiguous, it was assumed for the purposes of decision,
that the inference was drawn by the judge from the facts found by him and was
not a finding of fact upon conflicting oral evidence; so that, in considering
whether the inference was to be drawn, this court stood in the same relation
to the question as the judge who heard the case.

Upon the question, whether a right of way defined in a deed by ambiguous words
was over a proposed private street only so far as such street should adjoin the
land conveyed or whether the easement extended over a prolongation of the
proposed street upon other land of the grantor, the acts of a subsequent owner of
such other land more than eight years after the making of the deed to be inter-
preted have no bearing on the meaning of the doubtful language of that deed.

The owner of a tract of land on the outskirts of a city conveyed a parcel of such
land bounded northerly by a highway and "westerly on a proposed street to
be laid out fifty feet wide one hundred and eighty feet . . . with a right of
way over said proposed street." No plan or other deed was referred to to iden-
tify the proposed street or way. In a suit in equity the question was raised,
whether the right of way granted was only over a street fifty feet wide adjoin-
ing for one hundred and eighty feet the land conveyed or whether it extended
to a prolongation of such a street upon the land of the grantor as shown on a
plan caused to be recorded many years later by a subsequent owner of such other
land. It appeared that when the deed was given the only street in the immediate
neighborhood was the highway by which the northerly side of the lot was
bounded, that on the lot was a dwelling house facing on such highway, that
at the southerly end of this lot close to the westerly line was a pickle factory,
and that the only means of reaching this was by a way over land of the grantor
adjoining the westerly line of the granted premises, that eight years earlier the
grantor had planned with his brother the creation of a street, which was
described in mutual deeds, beginning where the right of way began, but that
five years before the giving of the deed in question the grantor had acquired
his brother's land and had abandoned the plan, that he had built partly within
the limits of such formerly projected street a substantial building, with a brick
cellar and stone foundations, and also a shed and two other structures, and
beyond these had set out on the formerly projected street an orchard with
pear and other fruit trees. *Held,* that from these facts it was to be inferred that

at the date of the deed there did not exist in the contemplation of the grantor or the grantee any other or longer proposed street than such as would adjoin the granted premises.

BILL IN EQUITY, filed in the Superior Court on October 31, 1911, by the owner of a parcel of land at the corner of West Neptune Street and a private way called Pitkin Street in Lynn, to establish a right of way in an alleged part of Pitkin Street extending southerly beyond the plaintiff's land as well as in the part of Pitkin Street adjoining the plaintiff's land.

The case was heard by *Pierce*, J. He filed a memorandum of findings, containing the facts which are stated in the opinion. The deed there mentioned of Gustavus A. Fairchild to George E. Curtis and Frank Curtis, the plaintiff's predecessors in title, was dated July 27, 1881, and conveyed "that certain parcel of land with the buildings thereon standing situate in said Lynn and bounded and described as follows viz: northerly by West Neptune Street ninety-five feet, easterly by land of George P. Goss one hundred and fifty-eight feet southerly by land of the grantor ninety-five feet and westerly on a proposed street to be laid out fifty feet wide one hundred and eighty feet be all of said measurements more or less, with a right of way over said proposed street."

The findings of the judge contained, among other matters which are mentioned in the opinion, the following: "I draw the inference and therefore find that at the date of the conveyance to the Curtises there did not exist in the contemplation of the grantor or grantees any other or different proposed street than such as lay adjacent to the granted premises."

The land on which the plaintiff claimed the right of way was owned by the defendant, which had constructed a building and a railroad track over portions of the alleged Pitkin Street and proposed, unless restrained by the court, to erect a large structure covering the alleged Pitkin Street to a point farther north than that already occupied but south of and not adjacent to the plaintiff's land.

The judge made a final decree that the bill be dismissed with costs to the defendant; and the plaintiff appealed.

The case first was argued on January 6, 1913, before *Rugg*, C. J., *Morton, Braley,* & *Sheldon,* JJ. The case was argued again at a special sitting of the court on May 22, 1913, before *Rugg*, C. J.,

*Hammond, Loring, Sheldon,* & *De Courcy,* JJ., and afterwards was submitted on briefs to all the justices.

*S. L. Whipple,* (*A. Lincoln* with him,) for the plaintiff.

*W. H. Niles* & *R. P. Clapp,* for the defendant.

RUGG, C. J.   This is a bill in equity by which the plaintiff seeks to establish a right of way over Pitkin Street, so called, in the city of Lynn as appurtenant to a lot of land owned by him. The plaintiff is the successor in title to George E. and Frank Curtis, and his alleged right of way depends upon the construction of a deed to them dated July 27, 1881, from Gustavus A. Fairchild, who was then owner of a tract of land including that under and adjacent on both sides to what is now Pitkin Street.   That deed described by lengths of line the other boundaries of the lot, and concluded with these words: — "Westerly on a proposed street to be laid out fifty feet wide one hundred and eighty feet be all of said measurements more or less, with a right of way over said proposed street."   The westerly boundary line of the lot conveyed was one hundred and eighty feet in length.   The deed contained no reference to any plan nor to other deeds or instruments by which the "proposed street" or the "right of way over" may be identified. The case was tried before a judge of the Superior Court, who found all the material facts, and then drew "the inference and therefore" found "that at the date of the conveyance to the Curtises there did not exist in the contemplation of the grantor or grantee any other or different proposed street than such as lay adjacent to the granted premises."

It has been argued that this finding of intention on the part of Gustavus A. Fairchild  at the time of the Curtis deed stands as a finding of fact which under the familiar rule is not to be reversed unless plainly wrong.   There is force in this contention. But for the purposes of this decision it is assumed in favor of the plaintiff that this inference was one drawn by the trial judge from the facts found by him and not one made by him upon conflicting evidence oral in whole or in part, and hence that the appellate court stands in the same place as the judge who heard the case. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, 143.

The facts to be considered are those substantially contemporaneous with or previous to the Curtis deed, which contains the language to be construed.   The acts of Henry Fairchild eight and

more years after the date of the Curtis deed throw no light upon
the intent of the parties to that deed in using the words "pro-
posed street to be laid out fifty feet wide," for several reasons.
He was not a party to the Curtis deed. His acts are so far sub-
sequent and are so disconnected with that deed as to forbid
the inference that they had relation to it as parts of the same
transaction or were made in explanation or characterization of it.
They have no tendency to show a practical construction of that
deed by the parties, both because of the remoteness of time and
because the ownership of both tracts had changed in the mean-
time. Such conduct affords no aid in ascertaining the meaning
and intention of the parties to the Curtis deed. Acts of a later
owner, long after the deed to be construed, with a purpose which
may have been far different, shed no light upon the interpretation
of doubtful language in that deed. *Rogers* v. *Powers,* 204 Mass.
257, 264.

No contention is made that the facts found by the judge
are not supported by the evidence. No other conclusions than
those reached by him as to the extraneous facts seem possible
on the record. The precise question is whether on these facts
the words "proposed street" as used in the Curtis deed from
Gustavus A. Fairchild in 1881 mean the Pitkin Street shown
on a plan caused to be recorded by his brother Henry who was his
successor in title in 1892 eleven years afterwards. The mean-
ing of these words in the Curtis deed is for the court, but all the
material facts existing at the time concerning the subject matter
may be considered for the purpose of ascertaining the sense in
which the language was used. It is important for the court
so far as possible to place itself in the position of the parties at
the time when the words were chosen with all the knowledge of
attendant circumstances in their possession, and then to de-
termine the natural and probable signification which reasonable
persons would have attached to this language. The situation
in 1881, when the Curtis deed was made, was this: — The only
street in the immediate neighborhood was West Neptune Street,
by which alone main thoroughfares of travel could be reached
from the lot conveyed to the Curtises. There was built upon the
granted premises a dwelling house which faced on West Neptune
Street, and in the rear reaching almost to its southerly line a con-

siderable building called the pickle factory, of which the Curtises were lessees and which they had used for making pickles. This building was close to the westerly line of the lot and the only access to it was by a way from West Neptune Street which Gustavus A. Fairchild had constructed and extended for the purpose of reaching it over land adjacent to the westerly line of the granted premises.

Viewed from the standpoint of the grantees, it is difficult to think that they could have contemplated as a "proposed street to be laid out fifty feet wide" anything more than one coterminous with their western boundary line. They were ignorant of the scheme for a street thereafter to be constructed projected eight years before between Gustavus A. Fairchild and his brother Henry, which had never materialized and which had been wiped out by a deed from Henry to Gustavus in 1878. The only way they needed for the full and complete enjoyment of the land and buildings they were buying was one which would enable them to reach the building at the rear of their lot from West Neptune Street. Looking southerly over what is now Pitkin Street, they would have seen permanent buildings, a flourishing young orchard and marshes but no public or private ways. There were no buildings in that general direction, but only marshes. A street over that locus would have seemed unlikely and useless. As found by the judge, over such a way as this there could be no reason to suppose that the occupants of the Curtis premises would ever have occasion to go, and the presence or absence of a way south of the wash-house seemingly could have added nothing to nor taken anything away from the usefulness or value of the premises.

Treating the situation from the position of the grantor, it appears that eight years before he and his brother had projected a division of this plot of land by a street. They had described this project in mutual deeds which were recorded, but it had remained an unaccomplished plan, toward which nothing had been done either on the face of the earth or on paper or otherwise for five years, when it had been abandoned and wiped out of existence by a warranty deed from the grantor's brother to the grantor, so that he was the owner in fee and had been for three years. The land was free from all obligation as to a way. Immediately upon acquiring absolute title he had built partly within the limits of this imaginary

street a substantial building with a cellar of brick and stone foundations, called the wash-house, of ample dimensions, to be used in connection with the business of market gardening which he had established. He had also built a shed, a large hot-house and a cold frame house all encroaching upon this old projected street. The expense of these buildings must have been considerable. Then beyond that, also on the old projected street, he had set out an orchard of pear and other fruit trees. It would be difficult to conceive of acts disclosing more conclusively than these a fixed purpose for the permanent appropriation of the land. The construction of substantial buildings having definite and enduring use in connection with a necessary business is significant. The planting of an orchard of fruit trees is far more indicative of unwavering intention than most other acts of proprietorship. Several years are ordinarily required for any fruitage and a period of many years for full fruition. In the conduct of a husbandman scarcely anything shows a more deliberate and settled determination to devote land for a long time to a particular use to the exclusion of all others than the setting out of an orchard of pear and other fruit trees. It is almost inconceivable that a farmer, who had recently entered upon the enjoyment of full ownership of a tract of land and had erected these new buildings for agricultural uses and set out his young orchard, should contemplate at the same moment their entire destruction by a "proposed street" to be constructed within a reasonable time. Such an idea cannot be inferred in the absence of compelling considerations.

It is urged in behalf of the plaintiff that such considerations may be found in the fact that in 1873 the grantor and his brother had designed a street over what is now Pitkin Street fifty feet in width and that this was peculiarly within the knowledge of the grantor. If Gustavus A. Fairchild had intended this street when he made the Curtis deed it would have been natural for him to refer to the deed of 1873 which presumably was in his possession and by which the street could have been located. But passing this, as has been seen, that design was wiped out of existence by the deed from Henry to Gustavus in 1878. Slight significance is to be attached to the use of the word street rather than road or way in the Curtis deed. Farmers living within the limits of a city well might use these words indifferently. Nor is the width of

fifty feet of much consequence. This is a convenient width for any kind of way, especially where as here there was no passage through and teams which drove in must have room to turn around in. There is ample scope for an interpretation of the words "proposed street to be laid out fifty feet wide" which would seem within the reasonable contemplation of the parties at the time they were used. Some way over land of the grantor was needed by the grantees to reach their pickle-house, and this was all they required. A like way was needed by the grantor to reach his own wash-house and other buildings. A way of substantially the same length as and adjacent to the westerly line of the granted premises would satisfy both these necessities. A way like the present Pitkin Street would have seemed chimerical. There is nothing to indicate that Gustavus as owner of the entire tract ever contemplated a street extending southerly substantially beyond the southerly boundary line of the plaintiff's lot. He never used any such way, and neither he nor his heirs ever built one nor did any other act disclosing the thought of such a street. It was not until nine years after his death and nineteen years after the original idea of a street that a successor in title constructed a street which, although coincident with the street proposed in 1873 at one end, was almost fifty feet farther west at the other end. This in the opinion of a majority of the court falls far short of proving that Gustavus A. Fairchild had in mind any such street when he used the words "proposed street to be laid out fifty feet wide" in the Curtis deed, or that the Curtises had the slightest reason to suppose that they were used in that sense. The inference drawn by the judge of the Superior Court, that "at the date of the conveyance to the Curtises there did not exist in the contemplation of the grantor or grantees any other or different proposed street than such as lay adjacent to the granted premises," was right.

If it be assumed that the questions of evidence are before us properly, no error is shown. The plan of other land, acquired by Gustavus A. Fairchild from a different source than the plot of which the Curtis land was a part, had no bearing upon the construction of the Curtis deed and was excluded rightly as having no connection with the proposed way. *Gould* v. *Wagner,* 196 Mass. 270, 276. No reversible error appears on this record.

*Decree affirmed with costs.*