Argued December 7, 1955, reversed and remanded with instructions
February 8, petition for rehearing denied March 7, 1956

## BOUCHE ET UX v. WAGNER ET UX
293 P. 2d 203

*Bruce Williams,* Salem, argued the cause for appellant. On the briefs was John H. Carson, Salem.

*W. C. Winslow,* Salem, argued the cause and filed a brief for respondent.

PERRY, J.

This is a suit commenced by the plaintiffs to quiet their title in and to certain real property described in their complaint as follows:

"Lot numbered 2 of section 12, township 9 south of range 1 east of the Willamette Meridian; the north half of the west half of the west half of section 7 in township 9 south of range 2 east of the Willamette Meridian; and lot 1 of section 12 in township 9 south of range 1 east of the Willamette Meridian, all in Marion County, Oregon."

The defendants by answer allege ownership of a strip of land carved out of and running through the above-described real property in a generally easterly and westerly direction, which is more particularly described in the deeds hereinafter set out.

For clarity a drawing is here set forth.

On November 7, 1921, the owners of the land in section 7 conveyed to the Silverton Lumber Company (from whom the defendants deraign title) a portion of land in that section as follows:

"THIS INDENTURE WITNESSETH: That * * * (grantors) for the consideration of the sum of SIX HUNDRED FIFTY ($650.00) DOLLARS to them paid, have bargained and sold and by these presents do bargain, sell and convey unto

the SILVERTON LUMBER COMPANY, a corporation, the following described premises, to-wit:

"Beginning on the West line of the Northwest Quarter of Section 7 in Township 9 South Range 2 East of the Willamette Meridian in Marion County, Oregon, at a Point thereon where the center of the Silverton Lumber Company's Logging Railroad track, as now located and established, intersects said West line, and running thence Southerly along said West line 25 feet; thence Easterly and parallel with said Center line of said logging railroad 1384 feet, more or less, to the East line of the West Half of the Northwest Quarter of said Section; thence Northerly, along said East line 50 feet; thence Westerly and parallel with said center line of said logging railroad 800 feet; thence Northerly parallel with said West line of said Northwest Quarter of said Section 50 feet; thence Westerly parallel with said logging railroad 584 feet more or less, to the West line of the Northwest Quarter of said Section 7; thence Southerly along said West line 75 feet to the place of beginning; $1.00 U. S. Rev. Stamps cancelled B.S.N. 1/18/22.

"TO HAVE AND TO HOLD the said premises, with their appurtenances, unto the said SILVERTON LUMBER COMPANY, it successors and assigns forever.

"And the said grantors do hereby covenant to and with the said SILVERTON LUMBER COMPANY, ITS SUCCESSORS AND ASSIGNS, that they are the owners in fee simple of said premises; that they are free from all incumbrances and that they will warrant and defend the same from all lawful claims whatsoever.

"As a part of the consideration for this conveyance, the grantee agrees to provide such reasonable crossings over and under the railroad right of way herein conveyed to it as may be necessary for the convenient use of the West Half of the Northwest Quarter of Section 7 in Township 9 South Range

2 East of the Willamette Meridian by the present owners thereof, their heirs and assigns.

"IN WITNESS WHEREOF, said grantors * * *."

On October 12, 1918, Lizzie M. Burdick and S. J. Burdick, being the then owners of Lot 2 in section 12, conveyed a strip of land to the Lumbermens Engineering Company. This deed of conveyance was not introduced in evidence and is not before us.

On September 9, 1919, the Lumbermens Engineering Company, in accordance with their agreement as trustees of the land for the benefit of the Silverton Lumber Company (from whom these defendants deraign title), conveyed to that company the strip of land in dispute in Lot 2, section 12, together with other lands, by deed as follows:

"KNOW ALL MEN BY THESE PRESENTS, That LUMBERMENS ENGINEERING COMPANY, a corporation, incorporated and organized under the laws of the State of Oregon, in consideration of One ($1.00) Dollar and other valuable considerations to it in hand paid by Silverton Lumber Company, a corporation, incorporated and organized under the laws of the State of Oregon, the receipt whereof is hereby acknowledged, has bargained and sold and does by these presents grant, bargain, sell and convey unto the said Silverton Lumber Company and unto its successors and assigns forever, the following described strips of land lying and being situate in the State of Oregon and particularly described as follows, to-wit:

* * * * *

"(8) A strip of land in Lot Two (2), Section Twelve (12), Township Nine (9) South, Range One (1) East, Willamette Meridian, fifty (50') feet in width, being twenty-five (25') feet in width on each

side of and parallel with the following center line; Beginning at the intersection of the East line of said Section Twelve (12) with the center line of the proposed railroad as located on the ground, which point of intersection is five hundred and sixty (560') feet North of the one-quarter section corner on the East side of said Section Twelve (12) and at Engineer's Station 296+50; thence on a six (6) degree curve to the right, the tangent to which at said point of intersection bears North seventy-two (72) degrees thirty-eight (38) minutes West, two hundred fourteen and four-tenths (214.4') feet to the point of tangency of said curve; thence North fifty-nine (59) degrees forty-six (46') minutes West along the tangent, one hundred fifty-one and eight-tenths (151.8') feet to the point of curve of a twelve (12) degree curve to the left; thence along said twelve (12) degree curve three hundred ninety-two and five-tenths (392.5') feet to the point of tangency; thence South seventy-three (73) degrees eighteen (18) minutes West along the tangent two hundred ninety-three and six-tenths (293.6') feet to the point of curve of an eighteen (18) degree curve to the right; thence along said eighteen (18) degree curve four hundred twenty-two (422') feet to the point of tangency; thence North thirty (30) degrees fifty-seven (57) minutes West along the tangent fifty-six and four-tenths (56.4') feet to the point of curve of an eighteen (18) degree curve to the left; thence along said eighteen (18) degree curve two hundred ninety-eight and eight-tenths (298.8') feet to an intersection with the East line of the A. Fitzgerald Donation Land Claim, containing two and ten one-hundredths (2.10) acres, more or less, in Marion County.

&ast; &ast; &ast; &ast; &ast;

"TO HAVE AND TO HOLD said above described and granted premises unto the said Silverton Lumber Company and unto its successors and assigns forever."

The Silverton Lumber Company constructed a railroad running through the strip of land in dispute, and sometime in 1931 or 1932 abandoned further use of the road, and removed the rails and a portion of the ties therefrom.

The Silverton Lumber Company was granted a certificate of dissolution by the state corporation commissioner on June 30, 1936. On December 20, 1939, the Silverton Lumber Company, by its board of directors, executed two quitclaim deeds to Earl and Jessie Chapel, the then owners of land adjoining plaintiffs' property on the east; the deeds being in part as follows:

"KNOW ALL MEN BY THESE PRESENTS, that SILVERTON LUMBER COMPANY, a corporation a corporation [sic] duly organized and incorporated under the laws of the State of Oregon [,] in consideration of ONE AND NO/100 Dollars, And other valuable consideration to it paid by EARL CHAPEL and JESSIE CHAPEL, his wife, do hereby remise, release and forever QUITCLAIM unto the said EARL CHAPEL and JESSIE CHAPEL, his wife, and unto their heirs and assigns [,] all its right, title and interest in and to the following described parcel of real estate, situate in County of Marion [,] State of Oregon, to-wit:

"A strip of land in Lot Two (2), Section Twelve (12), Township Nine (9) South, Range One (1) East, Willamette Meridian, said land being the premises granted to the Lumbermans Engineering Company by Lizzie M. Burdick and S. J. Burdick on the 12th day of October, 1918 and recorded in the Marion County Records in the Book of Deeds Vol. 147 and Page 468.

"TO HAVE AND TO HOLD the same, together with all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining to the said EARL CHAPEL and

JESSIE CHAPEL, his wife [,] and to their heirs and assigns forever.

"IN WITNESS WHEREOF, SILVERTON LUMBER COMPANY, a corporation, pursuant to a resolution of its Board of Directors, duly and legally adopted, has caused these presents to be signed by its President and Secretary, and its corporate seal to be hereunto affixed this 20th day of December A. D. 1939."

The deed quitclaiming the land in section 7 is identical to the above-deed, except for the description of the property which reads as follows:

"A strip of land in Section Seven (7) Township Nine (9) South, Range Two (2) East, Willamette Meridian, said land being the premises granted to the Silverton Lumber Company by Valerine Stein and Edward P. Stein; Lila Johnson and Walker D. Johnson; Ellen Cole and Ray C. Cole on the 7th day of November, 1921 [,] and recorded in the Marion County Records in the Book of Deeds, Vol. 162 and Page 618."

Each deed was signed by the president and secretary, and acknowledged by them as having been done by authority of the board of directors, and the corporate seal was affixed.

The Chapels conveyed their land adjoining the plaintiffs' land and the strips of land set forth in the above conveyances from the Silverton Lumber Company to the defendants herein on May 24, 1945.

The plaintiffs base their claim of ownership in fee simple upon two propositions: (1) The Silverton Lumber Company operating a railroad obtained only an easement in the property, and, since the plaintiffs and their predecessors in interest were the owners of the lands surrounding the strip, upon abandonment of the

railroad the lands reverted to them; (2) they obtained title by adverse possession.

The defendants base their claim of ownership to the strip of land upon the assertion of a fee title in the Silverton Lumber Company, and also claim by adverse possession.

A decree for the plaintiffs was entered in the trial court, and the defendants have appealed.

■ We are satisfied from a search of the record that the claim to ownership by adverse possession was not proven by either the plaintiffs or the defendants.

It is, therefore, necessary to consider the nature of the estate in the real property acquired by the Silverton Lumber Company. If an easement, then the plaintiffs should prevail; if a fee simple title, then the defendants should prevail.

The plaintiffs rely upon the following words, found in the conveyance of November 7, 1921, as restricting the conveyance to an easement only:

> "As a part of the consideration for this conveyance the grantee agrees to provide such reasonable crossings over and under the railroad right of way herein conveyed to it as may be necessary for convenient use [of grantors' adjoining land]."

■ "Whether an instrument conveys ownership of the land or only an easement depends upon the intention of the parties." 28 CJS 681, Easements § 27.

ORS 93.120 provides:

> "Any conveyance of real estate passes all the estate of the grantor, unless the intent to pass a lesser estate appears by express terms, or is necessarily implied in the terms of the grant."

■ The intention to convey less than the full fee must be clearly expressed or necessarily implied from

the words used in the conveyance. *Weniger v. Ripley,*
134 Or 265, 293 P 425. The courts and text-books writers
have suggested many tests as aids in determining the
intention of the parties. See 2 Thompson, Real Prop-
erty (perm ed) §§ 459 and 462; *Sherman v. Petroleum
Exploration,* 280 Ky 105, 132 SW2d 768, 132 ALR 137,
and annotation following; *Brightwell et al v. I. & G.
N. Ry. Co. et al.,* 121 Tex 338, 49 SW2d 437, 84 ALR
265, and annotation following. Some of these tests are
set forth and applied by this court in *Bernards et ux
v. Link and Haynes,* 199 Or 579, 248 P2d 341, 263 P2d
794.

A study of the cited cases suggests that the courts
have little difficulty, where a railroad company is
grantee, in declaring that the instrument creates only
an easement whenever the grant is a use to be made of
the property, usually, but not invariably, described as
for use as a right of way in the grant.

On the other hand, the general rule concerning the
grant of land to a railroad as distinguished from the
grant of a right or use thereof is stated by the author
of the annotation of 132 ALR 145 as follows:

"Conveyances to railroads, which purport to
grant and convey a strip, piece, parcel, or tract
of land, and which do not contain additional lan-
guage relating to the use or purpose to which the
land is to be put or in other ways cutting down
or limiting, directly or indirectly, the estate con-
veyed, are usually construed as passing an estate
in fee."

The courts, however, seem to express a divergence
of opinion when the conveyance merely has a reference
to the use or purpose to which the land is to be put,
and which is contained in either the granting or haben-
dum clause, and, except for the reference, would uni-

formily be construed as passing title in fee. This confusion, we think, arises for the most part in the failure to distinguish the twofold meaning of the words "right of way."

In *New Mexico v. United States Trust Co.,* 172 US 171, 183, 19 S Ct 128, it is stated:

"In Keener v. Union Pacific Railway, 31 Fed. Rep. 126, 128, Mr. Justice Brewer defined the words 'right of way' as follows: 'The term "right of way" has a twofold significance. It sometimes is used to mean the mere intangible right to cross; a right of crossing; a right of way. It is often used to otherwise indicate that strip which the railroad company appropriates for its use, and upon which it builds its roadbed.'

"Mr. Justice Blatchford said in Joy v. St. Louis, 138 U. S. 1, 44: 'Now the term "right of way" has a twofold signification. It is sometimes used to describe a right belonging to a party, a right of passage over any tract; *and it is also used to describe that strip* of land which railroad companies take upon which to construct their roadbed.' That is, the land itself—not a right of passage over it. So this court in Missouri, Kansas & Texas Railway v. Roberts, 152 U. S. 114, passing on a grant to one of the branches of the Union Pacific Railway Company of a right of way two hundred feet wide, decided that it conveyed the fee." (Italics theirs)

See also *Johnson v. Valdosta, M. & W. R. Co.,* 169 Ga 559, 150 SE 845.

Let us now consider the conveyance of the strip in Section 7, conveyed to the Silverton Lumber Company. The conveyance is not entitled (1) a "right of way deed"; (2) the granting clause conveys land, not a right; (3) the consideration was substantial ($650); (4) there is no reverter provided for; (5) the words

"over and across the lands of the grantors" do not appear; and (6) the land conveyed is described with precision. The only indication that the parties may have intended an easement should pass is the incidental reference to a "right of way" in the covenant following the granting and habendum clause. Thus the term "right of way" as used in the deed could have referred to either the right of passage or to the land itself. There is nothing therein which in anywise limits the company in the use it might make of the land, and in every other particular the conveyance clearly states the conveyance of the fee.

■ We must, therefore, conclude that it was the intention of the parties that the fee in the land should pass.

The deed of the strip of land across Lot 2, Section 12, from Lizzie M. and S. J. Burdick to the Lumbermans Engineering Company was not introduced as evidence in the trial court. All we have is the deed from the Lumbermans Engineering Company to the Silverton Lumber Company, which includes eleven parcels of land.

Paragraph (8) of the deed described the strip in Lot 2, section 12, and, while there was no mention of the phrase "right of way" in paragraph (8), it is urged by the plaintiff that we should look to the conveyance of the strip across Lot 7, section 13, conveyed to the Lumbermans Engineering Company by Henry and Alice Lyons and described in paragraph (3), and to the conveyance of the strip across a portion of section 8 conveyed by Frank, Caroline and Chester Kubin and described in paragraph (10). Both of these descriptions incidently refer to the strip conveyed as a "right of way." It is doubtful whether these references carry any more weight than the refer-

ence in the Burdick-Silverton Lumber Company deed, but we do not feel it necessary to consider that issue.

██ This situation does not come within the rule first set out in this state in *Kruse v. Prindle,* 8 Or 158, which provided that two conveyances executed at the same time between the same parties and relating to the same subject matter may be construed together. The three deeds described in paragraphs 3, 8 and 10 refer to three separate instruments by three separate grantors, dealing with three separate parcels of land. The rule is well-stated in *Rogers v. Powers,* 204 Mass 257, 264, 90 NE 514:

> "We cannot attempt to discover and give effect to a conjectural intention of the parties interested in these lots to create this right of way, by construing together all the deeds and mortgages which have been made at different times, by different parties, and with different objects, having indeed nothing in common except that they refer to some one or more of the five lots with which we are concerned. That would be very different from the rule declared in some of our decisions that instruments made at the same time between the same parties, and concerning the same subject matter, may be taken together to ascertain the intent with which they were made."

See, also, *Blagen v. Thompson,* 23 Or 239, 31 P 647, 18 LRA 315.

██ Thus, we see that the deed to the strip across Lot 2, section 12 contained no mention of a right of way; it described the subject of the grant as "a strip of land," not as a "right," and there was no statement of the purposes for which it was granted; it described the land conveyed with a relatively high degree of precision; and the habendum clause is of the type usually employed to convey a fee simple title. This deed conveyed the fee simple title to the land involved.

The plaintiffs make a further attack upon the defendants' record title. They state in their brief:

"Again we say that the deeds from the Silverton Lumber Company to the Chapels (Def. Ex. 'F' and 'G') were not admissible. Upon dissolution of a corporation in states that have statutes like Oregon, title to any real property owned by the corporation is vested in the board of directors as trustees for the stockholders, and some courts hold that the title is even vested in the stockholders. (See 14-A, C.J., pp. 1152-3) Now, while the deeds referred to recite in the acknowledgments that they are executed by authority of its board of directors, it would take more than that to give these men authority to make these deeds. The stockholders would have to authorize the conveyance and there is no showing of any such authority."

In answer to this contention, we quote from 19 CJS 659, Corporations § 1099b:

"While recitals in conveyances showing the authority under which they are executed are sometimes very useful, and under some statutes are required, generally, in the absence of a contrary statute or charter provision the conveyance need not show on its face, or recite, the authority for its execution or of the persons purporting to act for the corporation."

In 19 CJS, Corporations § 1100b, we find:

"A deed purporting to have been executed by a corporation which bears the seal of the corporation and is signed by its officers or agents will be presumed to have been executed by its authority, particularly after the lapse of time, unless a statute exists providing that it shall be the duty of a specific officer of the corporation to execute its conveyances."

■ A certificate of dissolution was filed by the Silverton Lumber Company on June 30, 1936. The deeds

to the Chapels were executed by the Silverton Lumber Company in 1939—within the five year period during which a dissolved corporation was then authorized to continue its existence as a body corporate for winding up its affairs. § 25-221, Oregon Code 1930. The burden of proof was upon the plaintiffs to show that the deeds from the Silverton Lumber Company were executed without proper authority. *Atlantic & Pacific R. R. Co., v. City of St. Louis,* 66 Mo 228.

In view of our conclusions as to the deeds in question, it is unnecessary to consider the validity or invalidity of defendants' tax foreclosure deed from Marion County.

The decree of the trial court is reversed, and the cause is remanded to the circuit court with instructions to enter a decree not inconsistent with our opinion.

Neither party shall recover costs in this court.

TOOZE, J., not participating.