# EGAAS,
*Respondent,*

*v.*

# COLUMBIA COUNTY,
*Appellant.*

(26745; CA A26703)

673 P2d 1372

Diane Spies, Portland, argued the cause for appellant. With her on the brief was Spies and Rune, P.C., Portland.

Steven E. Benson, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

In 1913, the Circuit Court for Columbia County entered a judgment condemning a parcel of land 60 feet wide for a railroad right-of-way. Plaintiff is the contract purchaser of the servient property across which that extends. He brought suit to quiet title to the right-of-way. The trial court ruled in his favor, and defendant county appeals.

The railroad owned the right-of-way from 1913 until it was purchased by a timber company, which quitclaimed its interest to defendant for one dollar in 1939. The servient property has been conveyed several times since then. From 1941, all the conveyances excepted or were made subject to the right-of-way,[1] but it has not been used for railroad purposes since 1937. Plaintiff contends that the 1913 condemnation proceeding gave rise only to an easement and that that terminated in 1938 when the railroad tracks were removed and the right-of-way was no longer necessary for railroad purposes. Defendant contends that the condemnation conveyed title in fee simple and that it holds that fee by virtue of the 1939 quitclaim deed.

■     The statutes in effect in 1913 are found in Lord's Oregon Laws:

"§ 6839. Any corporation mentioned in § 6838 [*i.e.*, a corporation organized for the construction of any railway] may appropriate so much of said land as may be necessary for the line of such railway * * * and in case of railway, sufficient quantity of such land, in addition to that above specified in this section, for the necessary side tracks, spur tracks, and laterals reasonably necessary for manufacturing establishments, also for depot and water stations, cuttings, and embankments, and for the proper construction, security, and convenient operation of its roads; and such railway company shall have the right to cut down any standing timber in danger of falling upon its road, making compensation thereof as provided in this act, for lands taken for the use of the corporation, and shall have the right, and may appropriate the right, to conduct water thereto by aqueducts; and any such railway corporation may cross, intersect, join and unite its railway with any other railway at any point in its route, and

---

[1] No tax records or assessor's reports are in the trial record. The strip in question has always been on the tax rolls and has at no time been exempted as county property.

upon the grounds of such other railway corporation, and make the necessary turnouts, sidings, switches, and other conveniences in furtherance of the object of its connection and may appropriate to make such crossings; the railway which is or may be intersected by new railways, may unite with the owners of such new railways in forming such intersection and connection, and grant the facilities aforesaid * * *."

"§ 6859. Whenever any corporation authorized as in the provisions of this act, to appropriate lands, right-of-way, right to cut timber, or to cross or connect with another railway or other right or easement in lands, is unable to agree with the owner thereof as to the compensation to be paid therefore, or if such owner be absent from the state, such corporation may maintain an action in the circuit court of the proper county, against such owner, for the purpose of having such lands, right to cut timber, or to cross, or to connect with another railway, or other right or easement appropriated to its use, and for determining the compensation to be paid to such owner therefor. * * *."

"§ 6862. The complaint shall describe the land, right or easements sought to be appropriated with convenient certainty * * *."

"§ 6866. Upon the payment into court of the damages assessed by the jury, the court shall give judgment appropriating the lands, property, rights, easements, crossing, or connection in question, as the case may be, to the corporation, and thereafter the same shall be the property of such corporation."

Those statutes granted broad powers of eminent domain to private railway corporations, which could appropriate strips of land subject only to the limitation that the appropriation be "necessary." The statutory references to land, property, rights, right-of-way and easements do not appear to limit the nature of the interest a railroad could appropriate in particular situations, but rather to enumerate its options. We conclude, therefore, that the statutes authorized a railroad to take whatever interest, fee or easement, in the appropriated land that was necessary to accomplish its purposes.

The 1913 condemnation judgment reads in relevant part:

"* * * [I]t appears to the court that plaintiff commenced its action herein * * * to appropriate and acquire by condemnation proceedings, the strip and strips of land hereinafter

described, for a railroad right-of-way over and across * * * [lands] * * * owned by the defendants. * * *

"It further appears that the land of the defendants which plaintiff seeks to appropriate, condemn and acquire by this action as particularly described as follows:

"A strip of land 60 feet in width, being thirty (30) feet in width on each side of the parallel with the following described center line of plaintiff's railroad as the same is surveyed, located and staked out as aforesaid over and across the said premises of defendants' * * *.

"An order was duly and regularly made and entered calling a jury to determine and assess the damages resulting and to result to the defendants by reason of the appropriation of the said right-of-way, and the strips of land hereinabove described and sought to be appropriated, condemned and acquired herein by the plaintiff, together with all damages which the defendants will suffer by reason of the construction, maintenance and operation of said railroad by the plaintiff * * * the said jury determined that the appropriation of said strip and strips of land above described was and is necessary as a right-of-way for the proper and convenient construction, maintenance and operation of plaintiff's said line of railroad; and in and by said verdict said jury further found and assessed the damages resulting to the defendants by reason of the appropriation of said above described land and the construction and operation of plaintiff's railroad thereon and thereover at the total sum of *Four Hundred Seventy-Five ($475.00) dollars;* it further appears to the Court that said damages so found, assessed and awarded cover and include all damages of every kind and character that said defendants have sustained or will sustain by reason of the appropriation of said land and the construction, maintenance, and operation of said railroad * * *.

"NOW, THEREFORE it is hereby Ordered and Adjudged that the said land hereinbefore described be and the same is hereby appropriated and condemned to the Plaintiff, the Columbia & Nehalem River Railroad, and that this said plaintiff hereby takes and acquires the interest and title of the defendants above named in said land hereinbefore described, and that plaintiff may forthwith enter into possession of the same, and proceed to construct its line of railroad upon and over said lands."

The general rule regarding the interest taken in a right-of-way condemnation proceeding by a railroad is that, unless otherwise expressly provided by statute or in the

instrument of taking, only an easement is acquired. *See Cappelli v. Justice,* 262 Or 120, 128, 496 P2d 209 (1976); 3 Nichols, Law of Eminent Domain 9-6 to 9-10, § 9.2 (3d ed rev 1975). The Oregon statutes that governed the 1913 condemnation allowed for the taking of whatever estate was *necessary* to accomplish the railroad's purpose. The quoted judgment is ambiguous. It refers to the interest taken as a "right-of-way" that runs "over and across" the condemnees' land. However, it also states that the railroad "takes and acquires the interest and title of the defendants above named in said lands." The "over and across" language suggests the grant of an easement, but the acquisition of "the interest and title of the defendants" suggests a fee. A majority of courts in other jurisdictions have held that in the case of an ambiguous condemnation judgment, the condemnor takes only an easement. *See* Nichols, *supra; see also Note,* Easements-Railroad Right-of-Way, 33 Or L Rev 164 (1954). In the present case, that result is supported by the condemnation statutes that limit the nature of the estate taken to that necessary to accomplish the railroad purposes. An easement was all that was necessary for railroad purposes in this instance.

▮▮ The county argues that the determination of what interest was acquired in the 1913 condemnation proceeding is controlled by *Bouche et ux v. Wagner et ux,* 206 Or 621, 293 P2d 203 (1956), which involved the determination of the interest acquired by a railroad by a voluntary conveyance. The court, guided by ORS 93.120,[2] looked to the intention of the parties involved in the conveyance. For that reason *Bouche* is distinguishable and inapplicable to the present case.[3] Even if we were to apply the factors set out in *Bouche,*[4] we would still

---

[2] ORS 93.120 provides in part:

"* * * Any conveyance of real estate passes all the estate of the grantor, unless the intent to pass a lesser estate appears by express terms, or is necessarily implied in the terms of the grant."

[3] Nonetheless, a dictum in the case is worth noting:

"* * * [T]he courts have had little difficulty, where a railroad company is the grantee, in declaring that the instrument creates only an easement whenever the grant is a use to be made of the property, usually, but not invariably, described as for use as a right-of-way in the grant." 206 Or at 630.

[4] In *Bouche* the court set out six factors useful in determining whether a *conveyance* passed title in fee or merely created an easement. The court held that a conveyance passes title in fee when "[t]he conveyance is not entitled (1) a 'right of way'

conclude here that the railroad only acquired an easement, because the condemnation judgment describes the railroad's interest as a right-of-way that runs "over and across" the condemnee's land, language the *Bouche* court found to indicate the creation of an easement. The 1913 judgment also states that the appropriation was "necessary as a right-of-way for the proper and convenient construction, maintenance, and operation" of the railroad. The *Bouche* court reasoned that a "statement of the purposes for which [land] was granted" also tends to establish a transfer of less than a fee. 206 Or at 633.

The county also argues that the trial court was without authority or capacity to quiet title in plaintiff, a contract purchaser, because the legal title holder, the seller, is a necessary party but was not joined in the action to quiet title. We agree. As contract purchaser, plaintiff has an equitable interest in the land affected by the right-of-way. If the title to the right-of-way were quieted in plaintiff and if he were to default, the ownership status of the right-of-way would be unclear. Plaintiff would retain title to the right-of-way against the county, but the vendor could still be subject to the county's purported interest. Further litigation might be necessary. A legal title holder of property subject to a railroad right-of-way is a necessary party under ORCP 29A in an action to quiet title to a right-of-way brought by a contract purchaser of that property. *See State ex rel Dept. of Trans. v. Tolke,* 36 Or App 751, 753 n 2, 586 P2d 791 (1978), *rev den* 286 Or 149 (1979). Therefore, we reverse and remand for proceedings consistent with this opinion.

Reversed and remanded for joinder of all necessary parties and any further proceedings that may be necessary.

---

deed'; (2) the granting clause conveys land, not a right; (3) the consideration was substantial * * *; (4) there is no reverter provided for; (5) the words 'over and across the lands of the grantors' do not appear; and (6) the land conveyed is described with precision." 206 Or at 631.