Argued April 3, affirmed May 24, 1972

HAY ET UX, *Respondents, v.* STEVENS ET UX,
*Appellants.*
497 P2d 362

*Hayes Patrick Lavis,* Astoria, argued the cause for appellants. With him on the brief were Anderson, Fulton, Lavis & Van Thiel, Astoria.

*Jerry K. McCallister,* Astoria, argued the cause for respondents. With him on the brief were MacDonald, Dean, McCallister & Snow and Jeanyse R. Snow, Astoria.

O'CONNELL, C.J.

This is a suit in which plaintiffs seek to establish a prescriptive easement in the form of several pathways across defendants' land. Defendants appeal from a decree in favor of plaintiffs.

Defendants own a parcel of land at Cannon Beach, Oregon, between plaintiffs' land and the beach. Plaintiffs purchased one parcel of their property (Lot 4) from a Mrs. Morrison and an adjoining parcel (Lot 5) from a Mr. and Mrs. Wolff. Plaintiffs and their predecessors in title to both parcels used the pathways above to get to the public part of the beach.

The only question on appeal is the sufficiency of the evidence to sustain plaintiffs' claim to a prescriptive easement.

In 1933 the Wolffs began crossing defendants' parcel to get from their house on Lot 5 to the beach. The house sat close to the edge of a steep decline described as a "cliff" by some witnesses. Paths from each of two sides of the house converged into a single path down the "cliff" so steep that steps were cut into it for footholds. Three pathways led from the house

on Lot 4 to the beach; each followed a steep gradient similar to that of the paths on Lot 5. Since the houses on both lots were used principally during summers and week-ends, use of the paths was intermittent.

■ Defendants contend that there was not adequate proof to establish a prescriptive right. They first argue that plaintiffs failed to prove the element of continuity of use. There was evidence that the paths were used regularly during the periods when the homes on Lots 4 and 5 were occupied. Although, as indicated above, these periods were intermittent, we are of the opinion that the evidence demonstrates the necessary continuity of use.

As pointed out in 5 Restatement of Property (Servitudes), § 459, *comment b,* p. 2936 (1944):

> "To satisfy the requirement that the use be continuous it is not necessary that it be constant. A use may be continuous though there are periods of time more or less extended between the specific acts of use. Many easements, such as rights of way and rights of hunting or fishing, which are periodical or only occasional in use may be acquired by prescription. The requirement means that there be no break in the essential attitude of mind required for adverse use rather than that the use be constant."

In cases in which title was claimed by adverse possession we have acknowledged continuity of use despite considerable periods of time during which there was no use of the property. Thus in *Springer v. Durrette et ux,* 217 Or 196, 352 P2d 132 (1959) we held that the fact that the land was used for grazing only from April to November did not preclude the claim for lack of continuity. There we pointed out that an important consideration in testing continuity is the character of

the property and the manner in which an average owner would use it.[1]

In the present case the pathways were used in a normal manner for owners of beach property and therefore the use was sufficiently continuous.

■■ It is further contended that plaintiffs failed to establish the element of adverseness in the use of the pathways. Defendants rely upon admissions, on cross-examination, made by plaintiff William Hay and his predecessors in title that they did not intend to acquire *ownership* of the pathways and that they would have discontinued using the pathways if defendants had made them stop. These admissions do not negative adverseness of use however; they amount to no more than disavowal by plaintiffs of any claim to ownership in the land and recognition by them of the legal authority of defendants to have prevented the use which was being made of their land. A use "is adverse though made in recognition of the wrongfulness of the use and, also, of the legal authority of another to prevent it." 5 Restatement of Property (Servitudes) § 458, *comment c,* p. 2926 (1944). A use is adverse if "not made in subordination" to the person against whom it is claimed to be adverse. *Ibid.,* p. 2924.

The evidence establishes that the use made by plaintiffs was "not in subordination" to defendants.

---

[1] This factor is discussed in 3 American Law of Property § 15.3, p. 767 (1952) where it is stated that "possession may exist in a person who uses the land in the way in which an average owner of the particular type of property would use it though he does not reside on it and his use involves considerable intervals in which the land is not actually used at all."

See also Norgard et al v. Busher et ux, 220 Or 297, 349 P2d 490, 80 ALR2d 1161 (1960); Knecht v. Spake et al, 218 Or 601, 346 P2d 98 (1959).

We conclude, therefore, that plaintiffs acquired a prescriptive right to use the pathways over defendants' land.

There is evidence that the strip of land owned by defendants is so narrow and steep that it is not practicable for defendants to build upon it or put it to any other useful purpose. In the event that defendants at some future time could make a practical use of the property, the question might arise as to whether the use of all of the five pathways by plaintiffs would constitute an unreasonable burden upon the servient estate.

However, since it appears that plaintiffs' use of the five pathways does not interfere with any use of the servient estate by defendants, it is not necessary to decide the question in this case.

The decree of the trial court is affirmed.

Tongue, J., concurs in the result.