Argued October 11, 1974, affirmed as modified January 7, 1975

HAY ET UX, *Appellants, v.* STEVENS ET UX,
*Respondents.*

530 P2d 37

*Jeanyse R. Snow* of MacDonald, Dean, McCallister & Snow, Astoria, argued the cause and filed briefs for appellants.

*Vawter Parker,* Portland, argued the cause for respondents. With him on the brief were Dezendorf, Spears, Lubersky & Campbell and Laurence F. Janssen, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, HOWELL, BRYSON, SLOPER and LEAVY, Justices.

O'CONNELL, C. J.
This is a suit in equity in which plaintiffs seek a

determination that a fence erected by defendants constitutes a nuisance and request that defendants be enjoined from further interference with plaintiffs' use and enjoyment of their property. Defendants counterclaim alleging that plaintiffs had committed trespass by removing all of one fence and portions of another. After trial, the trial court dismissed plaintiffs' complaint and awarded both general and punitive damages to defendants. Plaintiffs appeal.

Plaintiffs own land at Cannon Beach, Oregon, on which is situated plaintiffs' summer home and a motel. Defendants own a parcel of unimproved land which lies between plaintiffs' property and the beach. Defendants also own land to the south on which they have a home and also operate a restaurant and motel. Relations between the parties appear never to have been harmonious, and disputes between them have ended in litigation on several occasions.[1] This case is a sequel to the case of *Hay v. Stevens,* 262 Or 193, 497 P2d 362 (1972), in which we affirmed the trial judge's determination that plaintiffs were entitled by prescription to five easements over defendants' property from plaintiffs' property to the beach. Soon after that suit was filed in circuit court in May 1969, defendants erected a fence of lumber and wire mesh, called "hogwire," across their undeveloped land between plaintiffs and the sea. Plaintiffs complained that this fence was unsightly and constituted a nuisance.

The trial court's ruling establishing the easements in favor of plaintiffs came approximately one year after the fence was erected. There was apparently some discussion between the attorneys for the parties

---

[1] Hay v. Stevens, 262 Or 193, 497 P2d 362 (1972); Stevens v. Hay, 268 Or 20, 519 P2d 1040 (1974).

that the fence would be removed or the easements "opened up" by June 6, 1971. By the evening of June 6, 1971, the fence obstructing the easements had not been removed. Plaintiffs, with the aid of friends, thereupon took matters into their own hands and removed the fence. The upright fence posts were sawed off at ground level and the entire fence assembly transported to the beach over the easements. There the wood and wire were separated, the wire rolled up and the materials carefully placed upon defendants' land. Plaintiffs admit that they trespassed upon defendants' land in the course of cutting the fence posts and in placing the dismantled fence on defendants' land.

Soon after plaintiffs removed the fence, defendants erected another fence identical to the first, except that openings for three of the five easements were left. The two additional easements were not opened because of a confusion as to their location as a result of an inaccurate recitation of the easements in the original decree. The second fence was not disturbed for the first year of its existence. In May of 1972, this court decided the first *Hay v. Stevens* case, as stated above. When defendants had not taken any action in recognition of the decree allowing all five easements, the plaintiffs again grew restless. A few days after the entry of the decree Mr. Hay, with the help of the members of his family and friends, removed the two sections of fence blocking the two most northerly easements. The rest of the fence, in three sections, still stands. It is this remaining part of the fence which plaintiffs seek to have declared a nuisance in this suit.

We consider first plaintiffs' contention that defendants have created a nuisance. It is argued that defendants' fence unreasonably interferes with plaintiffs'

use and enjoyment of their land. The interference is unreasonable, plaintiffs contend, because the harm visited upon them by the "hogwire" fence clearly outweighs the utility of defendants' conduct.[2] Plaintiffs describe the harm not only in terms of defendants' interference with the aesthetic sensibilities of any normal person in plaintiffs' position, but also on the ground that the plaintiffs suffered economic loss in the form of reduced rentals from their motel because potential customers refused to rent the rooms looking out upon the fence. On the other side of the scale, plaintiffs find no utility in the fence because, as plaintiffs put it, "no one is fenced out" by a structure with openings, which was the situation in this case.

■■ Although there is authority to the contrary, we begin with the assumption that in the appropriate case recovery will be permitted under the law of nuisance for an interference with visual aesthetic sensibilities.[3] The difficulty, however, is in determining whether the interference complained of is of such gravity as to warrant relief. We are taught that where the interference "involves mere personal discomfort or annoyance, some other standard must obviously be adopted than the personal tastes, susceptibilities and idiosyncracies of the particular plaintiff" and that "[t]he standard must necessarily be that of definite offen-

---

[2] See Restatement of Torts, § 826 (1939): "An intentional invasion of another's interest in the use and enjoyment of land is unreasonable * * * unless the utility of the actor's conduct outweighs the gravity of the harm."

[3] See Yaeger v. Traylor, 306 Pa 530, 160 A 108 (1932). Noel, Unaesthetic Sights as Nuisances, 25 Cornell L Q 1 (1939); Comment, Aesthetic Nuisance: An Emerging Cause of Action, 45 N Y U L Rev 1075 (1970). See also, Annot., Billboards and Other Outdoor Advertising Signs as Civil Nuisance, 38 ALR3d 647 (1971).

siveness, inconvenience or annoyance to the normal person in the community—the nuisance must affect 'the ordinary comfort of human existence as understood by the American people in their present state of enlightenment' [footnote omitted]."[4]

■ We are not convinced by the evidence in the record that the interference in this case was of such a character as to meet the foregoing standard. The photographic exhibits depict a fence of not unusual design. It does not strike us as being definitely offensive. The trial judge, who viewed the premises, reached the same conclusion.

Since the harm to the plaintiffs' interest and the utility of the defendants' conduct are variables which play against each other, we must consider the purpose which the fence was intended to serve. Plaintiffs argue that it was constructed solely out of spite and retribution for plaintiffs' conduct in successfully asserting their claim to an easement. Defendants counter with evidence through the testimony of an insurance agent from whom defendants obtained liability coverage for their motel business and property that the agent felt that the steep bank on defendants' property "presented a severe attractive nuisance hazard without some sort of a barricade or fence to protect any children basically from falling off the edge of the bank," and he informed defendants that "in order for us to provide comprehensive public liability * * * it would be our requirement a fence be put on his property line to deter the public from going down the bank and thereby suffering possible injury."

Accepting this testimony, which we have no reason

---

[4] Prosser, The Law of Torts, § 87 at 578 (4th ed 1971).

to question, defendants explain the utility of the fence which, when weighed against plaintiffs' harm, predominates. We hold, therefore, that the trial court correctly found that no nuisance existed.

■ Plaintiffs also appeal from the award of damages against them on defendants' counterclaim. The trial court awarded general damages of $510.56, the sum of the materials cost of the two fences, and punitive damages of $600. During the pendency of the present suit we decided, in *Pedah Company v. Hunt,* 265 Or 433, 436, 509 P2d 1197 (1973), that "the allowance of punitive damages * * * is inconsistent with a court in equity doing justice between the litigants." Because this holding is directed to the proper administration of justice in a court of equity, we hold that the allowance of punitive damages in the present case must be reversed, even though plaintiffs did not enter proper objection to the award below.

■ Plaintiffs object to the award of general damages on the ground that the amount awarded is the sum of the cost of materials of both fences, when the greater part of the second fence is still standing and the materials used in the first fence were returned to defendants. Since the record is clear that the first fence was utterly destroyed and plaintiffs did not attempt to show that the materials returned to defendants had salvage value, we must sustain the award of $246.96 for the destruction of the first fence.

■ The second fence presents an entirely different problem. Defendants showed that plaintiffs removed two sections to open the easements. There is no evidence to establish the reduction in value of the fence caused by the removal of these two sections. In view

of the fact that defendants themselves would have been obligated to open the fence themselves if plaintiffs had not done so, we hold that defendants failed to meet their burden of proof on this issue. Defendants are, therefore, entitled to damages only in the sum of $246.96.

Affirmed as modified.