Argued and submitted April 11, 2008, reversed and remanded on plaintiffs' claim
for prescriptive easement; otherwise affirmed May 20, 2009

## Allen WISER
### and Shirley Wiser,
*Plaintiffs-Appellants,*

*v.*

## Keith ELLIOTT
### and Jenita Elliott,
*Defendants-Respondents.*

## Benton County Circuit Court
## 0610270; A134804

209 P3d 337

George B. Heilig argued the cause for appellants. With him on the brief was Cable Huston Benedict Haagensen & Lloyd.

K. Joseph Trudeau argued the cause for respondents. With him on the brief was Cooney & Trudeau, P.C.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Plaintiffs brought adverse possession and prescriptive easement claims to obtain legal interests in a strip of land acquired by defendants from a railroad company. The trial court denied plaintiffs' summary judgment motion, granted defendants' summary judgment motion, and dismissed plaintiffs' claims. Based on the undisputed facts in the summary judgment record, we conclude that the trial court correctly denied plaintiffs' summary judgment motion and properly allowed defendants' summary judgment motion on the basis that plaintiffs could not establish adverse possession of defendants' property. However, defendants did not establish the absence of genuine issues of material fact on whether a prescriptive easement existed over that property. We therefore reverse the judgment as to the prescriptive easement claim and otherwise affirm.

The summary judgment record reveals the following undisputed facts. Plaintiffs own parcels of land that abut a strip of land. The strip of land was deeded to the Portland, Eugene, and Eastern Railroad in 1912 and 1913 in five conveyances. Three of those conveyances were deeds that clearly conveyed fee ownership of the land to the railroad. The two remaining conveyances were captioned "right of way deed" and granted property "to be used for right of way purposes." The parties differ on whether those deeds conveyed easements or fee interests in the two properties.

All five parcels of land were later conveyed to Southern Pacific Company (railroad). The railroad used the properties for operation of a rail line, part of its West Side Branch in Benton and Lane counties. The railroad stopped using the strip of land for a rail line in 1958 and removed the tracks and ties from the parcels. In 1959, it notified state taxing authorities that the Interstate Commerce Commission had "authorized the abandonment of operation" of a portion of the West Side Branch that included the disputed properties and that the "strip of right of way" was "no longer needed for operating purposes." The railroad asked that the "property be reclassified to non-operating property." Sometime later, part of the properties began to be used as a public roadway by farmers and other residents in the area.

Plaintiffs acquired interests in their adjacent properties under a 1977 land sale contract and 1995 warranty deed from the Kaysers, who had acquired the properties in 1974. Both the 1977 land sale contract and the 1995 deed from the Kaysers excepted the railroad properties from the description of the land conveyed to plaintiffs. Plaintiffs presented evidence that they and the Kaysers had used the railroad properties since 1974 "for cattle ranching, farming, and other uses for which such land is typically used" and "[u]sed the right of way as if it was their own."

However, in 1985, plaintiffs and the Kaysers sold some of the land abutting the railroad properties to Holiday Tree Farms (Holiday). That conveyance did not include any interest in the railroad properties. Those parties also signed an easement agreement at that time. The agreement recited that the properties at issue were "land owned by Southern Pacific Railway" and that the Southern Pacific Railway properties were being used by plaintiffs to move cattle. The agreement provided for reciprocal easements to Holiday and plaintiffs "in the event Southern Pacific Railway restricts access to the land being purchased" by Holiday or "[i]n the event Southern Pacific Railway restricts the access of [plaintiffs] to move their cattle."

Defendants acquired the strip of land at issue from the railroad by a quitclaim deed in 2005. Shortly thereafter, they demanded that plaintiffs stop using the properties. Plaintiffs then brought this action for adverse possession of three of the five parcels: Tax Lots 200, 1900, and 300. Those three properties constitute the lower portion of the strip of land. Tax Lot 200 was conveyed to defendants' predecessor by one of the two "right of way" deeds; Tax Lots 1900 and 300 were conveyed by fee deeds. Plaintiffs' second claim for relief was for ejectment of defendants from those same parcels because plaintiffs were "the owners in fee simple of the disputed area through adverse possession and are entitled to possession of the disputed area."[1] Plaintiffs' complaint also

---

[1] The adverse possession claim for relief in the complaint asserts that the use of "Tax Lots 200, 300, and 1900 has been open, notorious, hostile, continuous and exclusive of all others for a period in excess of ten (10) years." The identification of those properties in the complaint is confusing. Tax Lot 200 is described as conveyed

included a third claim for a prescriptive easement over the roadway that follows the former path of the railroad tracks on all five parcels of land. Defendants counterclaimed for trespass damages, ejectment, and to quiet title to the parcels.

Plaintiffs moved for partial summary judgment on the basis that defendants have no legal interest in the two "right of way" parcels as a matter of law. Plaintiffs contended that the railroad abandoned its interests in those parcels and that legal title reverted to plaintiffs by that abandonment. Plaintiffs sought to establish abandonment in order to advance part of their claims for adverse possession and ejectment. Defendants moved for summary judgment and dismissal of all of plaintiffs' claims that were asserted in the complaint. The trial court denied plaintiffs' motion and entered a limited judgment that granted defendants' motion and dismissed plaintiffs' claims. Plaintiffs appeal from the limited judgment dismissing their claims with prejudice.[2]

Plaintiffs make three assignments of error on appeal. First, they contend that the trial court erred in denying their summary judgment motion and dismissing their claim of ownership to the property described in the two "right of way" deeds. Plaintiffs reason that the two "right of way" deeds conveyed only easements and that those easements terminated when the railroad abandoned the properties in 1959. Plaintiffs claim ownership of the servient estate and title to the area of the easements without restriction. The trial court concluded that plaintiffs failed to prove that the railroad abandoned its interests in the properties.

by a February 16, 1913, deed and is alleged to be attached as Exhibit A to the complaint (Complaint, ¶ 6). A different deed, a May 4, 1912, "right of way" deed, is attached as Exhibit A. The same deed is attached as Exhibit B. There is no February 16, 1913, deed attached to the complaint. There are two different deeds marked as Exhibit B-1 and attached to the complaint. Moreover, the color coding of two of the parcels in plaintiffs' brief appears to have been transposed. We assume that Tax Lot 200 is the March 23, 1912, "right of way" deed that is one of the Exhibits B-1. Tax Lot 300 is alleged to be an August 28, 1912, deed (Complaint, ¶ 7); Tax Lot 1900 was also conveyed by an August 28, 1912, deed (Complaint, ¶ 8). The other "right of way" deed, dated May 4, 1912, is described in the complaint as Tax Lot 600.

[2] Thus, the issues on appeal relate to whether plaintiffs established legal rights in defendants' property as pleaded in the complaint and based on the summary judgment record. The trial court did not enter judgment on defendants' counterclaims for trespass and ejectment and to quiet title.

In their second assignment of error, plaintiffs contend that the trial court erred in granting defendants' motion for summary judgment on the claim for adverse possession of the three parcels. The trial court determined that plaintiffs' use of the properties was neither hostile under the common-law test for adverse possession nor carried out with an honest belief of actual ownership under the statutory test for adverse possession set out in ORS 105.620. Plaintiffs assert that their 1985 easement agreement, which recognized that the railroad had rights in the disputed property, did not defeat the hostility element of their adverse possession claim, but merely acknowledged that the railroad had a record interest.

Finally, in their third assignment of error, plaintiffs argue that the trial court erred in granting defendants' summary judgment motion and dismissing plaintiffs' claim for prescriptive easement under the same reasoning it used to dispose of the adverse possession claim. Plaintiffs submit that they established the adverseness element of their prescriptive easement claim through long-term use of the road through the disputed area, that, therefore, the burden shifted to defendants to show lack of adverseness, and that defendants failed in that proof. We address plaintiffs' assignments of error in turn.

■     Again, in their first assignment of error, plaintiffs contend that they proved ownership of two of the five segments of property because those properties were abandoned easements. To succeed in that claim, plaintiffs must show that (1) the 1912 conveyances were easements; (2) the easements were abandoned; and (3) plaintiffs own the underlying fee.[3] Defendants contend that plaintiffs made none of those showings. The trial court ruled that plaintiffs failed to prove that the easements had been abandoned. We agree that the

---

[3] The limited judgment was based on defendants' motion for summary judgment and determined the outcome of all three of plaintiffs' claims for relief. Plaintiffs' motion for partial summary judgment sought a determination as to any part of their claims that would be affected by abandonment of any easement interest held by the railroad. ORCP 47 A (allowing summary judgment for "any part" of a claim). We conclude that the court's ruling on plaintiffs' motion for summary judgment was part of the limited judgment under review.

summary judgment record does not establish that the railroad abandoned its interests in the two "right of way" properties.[4]

Abandonment occurs when an owner intends to make no further use of the property. *Bernards et ux. v. Link and Haynes,* 199 Or 579, 248 P2d 341 (1952). In *Bernards,* the court concluded that abandonment of an easement for a railroad right of way was not evidenced by the change of use of the easement from a railway to a road. We have since held that nonuse of an easement is insufficient by itself to prove abandonment. In *Conner v. Lucas,* 141 Or App 531, 538, 920 P2d 171 (1996), we reiterated that,

> "[i]n *Abbott v. Thompson,* 56 Or App 311, 641 P2d 652, *rev den* 293 Or 103 (1982), we explained that nonuse alone does not constitute the abandonment of an easement. A party claiming abandonment must show in addition to nonuse 'either [a] verbal expression of an intent to abandon or conduct inconsistent with an intention to make further use.' *Id.* at 316."

Plaintiff's evidence of abandonment does not meet that mark. The railroad did not actually use the properties after 1959. However, plaintiff did not prove either a verbal expression of an intent to abandon by defendants or their predecessors or conduct by those parties that was inconsistent with an intent to make use of the easement. As evidence of intent to abandon the alleged easements, plaintiffs point to the 1959 letter from the railroad to the State Tax Commission that the railroad abandoned the "operating purposes" use of the properties for a railroad line and had removed the

---

[4] We do not need to decide, then, the foundation of plaintiffs' argument—that the "right of way" deeds conveyed an easement interest and not fee title. A conveyance presumably passes the entire interest of the grantor. ORS 93.120 currently provides that "[a]ny conveyance of real estate passes all the estate of the grantor, unless the intent to pass a lesser estate appears by express terms, or is necessarily implied in the terms of the grant." That rule of construction was in effect when the "right of way" deeds were executed in 1912. *See Ford v. Ore. Elec. Ry.,* 60 Or 278, 117 P 809 (1911); *Love v. Walker,* 59 Or 95, 115 P 296 (1911); *Tone v. Tillamook City,* 58 Or 382, 114 P 938 (1911); *Ruhnke v. Aubert,* 58 Or 6, 113 P 38 (1911). In *Bouche v. Wagner,* 206 Or 621, 293 P2d 203 (1956), the Supreme Court recognized that the use of the term "right of way" in conveyances to railroads could refer to a conveyance of land or a right of crossing. The court looked to a number of factors in determining whether a fee interest was conveyed in that case. *Id.* at 631. The parties here differ in their application of the *Bouche* factors to the deeds in question.

railroad tracks from the West Side Branch line. That communication, however, did not reveal any intent to abandon use of the properties. Instead, the letter announced a desire to change the use of the properties "to non-operating property." That change of use affected the taxation of the properties, but was not relevant to any indicia of ownership of those properties.

At the time in question, ORS 308.515 (1957)[5] required the State Tax Commission to assess "any property held for or used by any company in performing or maintaining any of the following businesses or services * * *: Railroad transportation." That assessment was then apportioned among the counties where the properties were located based on the mileage of the tracks within those counties. ORS 308.565 (1957), *amended by* Or Laws 1987, ch 601, § 2; Or Laws 1997, ch 154, § 90. That same system of property taxation of railroad property is used currently. ORS 308.515 (1957); ORS 308.565 (1957). The 1959 reclassification of the railroad properties from use for "operating purposes" to "non-operating propert[ies]" affected whether the properties were subject to central taxation. The removal of track played a part in the property tax apportionment formula. But the railroad's letter relating to those effects was not a "verbal expression of an intent to abandon or conduct inconsistent with an intention to make further use" of the properties, as required by *Conner* and *Abbott*. Instead, the letter revealed only an intent to use the properties for "non-operating" purposes, rather than an intent to not use the properties at all.

Moreover, the railroad's conduct subsequent to 1959 was inconsistent with an intent to abandon all use of the properties. The railroad continued to pay property taxes on the land to the county and sold the properties to defendants by quitclaim deed, indicating an intent to convey some retained interest in the properties.[6] Thus, plaintiffs did not establish any verbal expression or conduct by defendants or

---

[5] ORS 308.515 has been amended many times since 1957. All references to the statute in this opinion are to the 1957 version adopted as Oregon Laws 1957, chapter 711, section 2.

[6] *See* ORS 93.110 ("A deed of quitclaim and release, of the form in common use, is sufficient to pass all the estate which the grantor could lawfully convey by a deed of bargain and sale.").

their predecessors that clearly established abandonment of use of the properties. The trial court did not err in its summary judgment rulings on the issue of abandonment.

In their second assignment of error, plaintiffs argue that the trial court should not have granted defendants' motion for summary judgment on plaintiffs' claim for adverse possession of the three disputed parcels of land. Defendants moved for summary judgment in their favor on a dismissal of plaintiffs' adverse possession claim under ORCP 47 B ("A party against whom a claim * * * is asserted * * * may * * * move * * * for a summary judgment in that party's favor as to all or any part thereof."). Under ORCP 47 C, defendants were entitled to summary judgment if the summary judgment record showed "that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." ORCP 47 C further provides that the adverse party to a motion for summary judgment "has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial." Plaintiffs had the burden of persuasion on their claim for adverse possession and had the burden of producing evidence to support that claim in the face of defendants' summary judgment motion. *Worman v. Columbia County*, 223 Or App 223, 232, 195 P3d 414 (2008); *O'Dee v. Tri-County Metropolitan Trans. Dist.*, 212 Or App 456, 463, 157 P3d 1272 (2007). Once that showing is made, however, it becomes defendants' obligation to show that there is no genuine issue of material fact and that plaintiffs would not be entitled to a prescriptive easement as a matter of law.

■    Adverse possession in Oregon is governed by both the common law and statute. At common law, to establish ownership by adverse possession, claimants must prove by clear and convincing evidence that they or their predecessors in interest maintained actual, open, notorious, exclusive, hostile, and continuous possession of the property for a 10-year period. *Lieberfreund v. Gregory*, 206 Or App 484, 490, 136 P3d 1207 (2006). In 1989, the legislature enacted ORS 105.620, codifying the common law and adding an "honest

belief of actual ownership" requirement.[7] The new "honest belief" requirement supplemented the proof required for claims vesting after 1990. ORS 105.620. Measured under either standard, plaintiffs did not prove hostile use of the properties. As required by ORS 105.620, plaintiffs also failed to show any honest belief of actual ownership for any period of vesting after 1990.

The common-law and statutory definitions of "hostile possession" in ORS 105.620 occupy common ground. The statutory definition of hostility incorporates and codifies the common law and "the legislature intended the element of hostility to retain its common-law meaning." *Clark v. Ranchero Acres Water Co.*, 198 Or App 73, 80, 108 P3d 31 (2005). The common law requires that, "[to] establish the requisite hostility, a claimant must demonstrate a subjective intent to possess the property intending to be its owner and not in subordination to the true owner." *Hoffman v. Freeman Land & Timber, LLC*, 329 Or 554, 561, 994 P2d 106 (1999) (internal quotation marks omitted). Similarly, under ORS

---

[7] ORS 105.620 governs adverse possession claims and currently provides:

"(1) A person may acquire fee simple title to real property by adverse possession only if:

"(a) The person and the predecessors in interest of the person have maintained actual, open, notorious, exclusive, hostile and continuous possession of the property for a period of 10 years;

"(b) At the time the person claiming by adverse possession or the person's predecessors in interest, first entered into possession of the property, the person entering into possession had the honest belief that the person was the actual owner of the property and that belief:

"(A) By the person and the person's predecessor in interest, continued throughout the vesting period;

"(B) Had an objective basis; and

"(C) Was reasonable under the particular circumstances; and

"(c) The person proves each of the elements set out in this section by clear and convincing evidence.

"(2)(a) A person maintains 'hostile possession' of property if the possession is under claim of right or with color of title. 'Color of title' means the adverse possessor claims under a written conveyance of the property or by operation of law from one claiming under a written conveyance.

"(b) Absent additional supporting facts, the grazing of livestock is insufficient to satisfy the requirements of subsection (1)(a) of this section.

"(3) As used in this section and ORS 105.005 and 105.615, 'person' includes, but is not limited to, the state and its political subdivisions as created by statute."

105.620(2)(a), "a person maintains 'hostile possession' of property if the possession is under claim of right or with color of title." The phrase "claim of right" relates to the claimant's "intent to appropriate land to him or herself, to the exclusion of all others, regardless of whether that claimant has actual title to that land," and when that intent is proven, "then the claimant is said to possess that land under 'claim of right.'" *Hoffman*, 329 Or at 561.

■     Plaintiffs' execution of the 1985 easement agreement expressly acknowledged that the properties in question were "land owned by [the] Southern Pacific Railway."[8] An easement was conveyed "[i]n the event Southern Pacific Railway restricts [the use of the properties for] access to the land being purchased" by Holiday. Just as importantly, the agreement conveyed an easement to plaintiffs "[i]n the event Southern Pacific Railway restricts the access of [plaintiffs] to

---

[8] The relevant portions of the easement agreement provide as follows:

"WHEREAS, HOLIDAY is purchasing property from [plaintiffs] and [Kaysers], which property is described in Exhibit 'B' attached hereto, and which property is partially accessed by land owned by Southern Pacific Railway; and,

"WHEREAS, [plaintiffs are] currently grazing cattle on land located to the north of the property described in Exhibit 'B', and move their cattle by way of the same right of way owned by Southern Pacific Railway to their barns and lots located on the property; and

"WHEREAS, the parties hereto desire to provide for alternate access to their respective properties in the event Southern Pacific Railway restricts their access.

"NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, the parties agree as follows:

"A. In the event Southern Pacific Railway restricts access to the land being purchased by HOLIDAY, then and in that event [Kaysers] and/or [plaintiffs] will grant unto HOLIDAY an easement for ingress and egress over and across the property described in Exhibit 'A' attached hereto.

"B. In the event Southern Pacific Railway restricts the access of [plaintiffs] to move their cattle, then and in that event HOLIDAY and/or [Kaysers] will grant unto [plaintiffs] an easement, sixteen (16) feet in width, adjacent to the east boundary of the Southern Pacific Railway right of way, beginning at the south property line of the property being purchased by [plaintiffs] from [Kaysers] and extending along said *east property line of the Southern Pacific Railway* to a point where [plaintiffs] can cross *the Southern Pacific Railway right of way* with their cattle. In the event no such cattle crossing is permitted by Southern Pacific Railway, then HOLIDAY and [predecessor in interest] do not need to grant this easement in favor of [plaintiffs]."

(Emphasis added.)

move their cattle" on the properties. The agreement describes that easement by reference to the "east boundary of the Southern Pacific right of way" and the "east property line of Southern Pacific Railway." Rather than revealing plaintiffs' "intent to appropriate land * * * to the exclusion of all others," the agreement corroborates plaintiffs' contrary and inconsistent intent—to abide by any future exclusion of plaintiffs from the properties by the railroad.

The easement agreement established that plaintiffs could not prove a "subjective intent to possess the property intending to be its owner and not in subordination to the true owner." *Hoffman*, 329 Or at 561. The 1985 easement agreement memorialized both the Kaysers' and plaintiffs' understanding of the status of the railroad properties and established, absent any evidence to the contrary, that the use of the railroad properties after acquisition by the Kaysers in 1974 was not hostile to the railroad's ownership of the properties.

Plaintiffs submitted no evidence that they or their predecessors intended to appropriate the railroad properties to the exclusion of others. Plaintiffs presented evidence that, after the railroad tracks were removed from the properties, "the farmers in the area used the old railroad area as their own." Plaintiffs' affidavits attested that, after they purchased their property in 1977, "we intended to and did use the disputed property as our own." A neighbor attested by affidavit that the Kaysers and plaintiffs "always used the railroad right of way for cattle ranching, farming, and other uses for which such land is typically used." That evidence of use, however, did not prove an intent by plaintiffs or the Kaysers to exclusively appropriate the land to themselves. Indeed, the evidence was that the railroad right of way was not used by plaintiffs in any exclusive way but, instead, the properties were "used by the farmers in the area." Plaintiffs' use was insufficient to establish any claim of right and to establish adverse possession.

Although the evidence may have been sufficient to satisfy the requirement of actual use, it was insufficient to prove that the use satisfied the notoriety and hostility elements of adverse possession. In *Hoffman*, the court described

the necessary showing as a use that is "significant enough to put an owner on notice that his or her title is being challenged." 329 Or at 560. The evidence of nonexclusive use of the roadway area for moving cattle does not have that significance. The trial court correctly ruled that plaintiffs had not shown any hostile use of the railroad properties by plaintiffs or the Kaysers at any time before the litigation.[9] Defendants' motion for summary judgment was properly granted as to the adverse possession and related ejectment claims.

■      Plaintiffs argue in their third assignment of error that the trial court erred in granting defendants' motion for summary judgment and dismissing their claim for a prescriptive easement over defendants' properties. In order to go forward with evidence on their claim for a prescriptive easement for a roadway over defendants' properties, plaintiffs needed to show that they and their predecessors continuously used the property for the prescriptive period of 10 years in an open and notorious fashion that was adverse to the rights of the servient owner. *Thompson v. Scott,* 270 Or 542, 546, 528 P2d 509 (1974). In contrast to a claimant in an adverse possession claim, a claimant for a prescriptive easement need not show exclusive use. In *Bowman v. Bradley,* 127 Or 45, 55, 270 P 919 (1928), the court held that this "principle is well established." It concluded that a prescriptive right to use a drainage ditch was not defeated by the fact that other neighbors also used the ditch for drainage. *Id.* at 56.

■      When, as here, a prescriptive easement is sought for a roadway, particular evidentiary presumptions come into play. We explained in *Webb v. Clodfelter,* 205 Or App 20, 26-27, 132 P3d 50 (2006), that proof of "the open and continuous use of a road for the prescriptive period is presumed to be

---

[9] As noted earlier, a separate requirement of "honest belief that the [claimant] was the actual owner of the property" sought to be adversely possessed was added by the 1989 legislature. Or Laws 1989, ch 1069, § 1. That requirement applies to periods of adverse possession that extend beyond January 1, 1990. *Mid-Valley Resources, Inc. v. Engelson,* 170 Or App 255, 259 n 2, 13 P3d 118 (2000) (noting that the "honest belief" requirement did not apply because the alleged periods of adverse possession occurred between 1920 and 1986). Plaintiffs concede that their "case is not based upon an honest belief. Plaintiffs always knew that the property had been previously owned by Southern [Railroad] before it was abandoned." Thus, the relevant vesting period in this case is one that concludes before January 1, 1990.

adverse and under a claim of right." Once that proof is made, "the servient owner has the burden to rebut the presumption." *Id.* That presumption may be rebutted "by proving that the claimant was merely using an existing road that did not interfere with the defendant's use or by proving that the use was permissive in some other way." *R & C Ranch, LLC v. Kunde*, 177 Or App 304, 312, 33 P3d 1011 (2001), *modified on recons*, 180 Or App 314, 44 P3d 607 (2002); *see also Hayward v. Ellsworth*, 140 Or App 492, 496-97, 915 P2d 483 (1996); *House v. Hager*, 130 Or App 646, 650-51, 883 P2d 261 (1994). We elaborated on the "existing road" proof in *Webb*:

> "When the road is preexisting, however, and the claimant's use is nonexclusive, that presumption may be rebutted by proof that the claimant's use of the road did not interfere with the servient owner's use of the road."

205 Or App at 27.

Under those principles, plaintiffs discharged their burden of producing evidence under ORCP 47 C by establishing that they openly and continuously used the road for the prescriptive period. Plaintiffs submitted evidence that they, as well as "farmers in the area," used the roadway for farming and ranching purposes, and did so openly and continuously for a 10-year period. That evidence created a presumption of use that was adverse to the railroad, defendants' predecessor in interest. Once that proof was made, the burden shifted to defendants, as the summary judgment movants, to demonstrate the absence of a genuine issue of material fact as to whether the prior use was permissive.[10] The same evidence that was conclusive on the hostility element of the adverse possession claim—the intent shown by the 1985 easement agreement and the lack of any exclusive use—is

---

[10] The same evidence that creates a presumption of adverseness for the prescriptive easement claim—open and continuous use for the prescriptive period— does not create a presumption of hostility for the adverse possession claim. *Hoffman*, 329 Or at 562 ("The Court of Appeals' use of prescriptive easement case law to support a presumption of hostility in favor of defendants and to place the burden of proof on plaintiff to show permissive use in this adverse possession case was error."); *Feldman et ux. v. Knapp et ux.*, 196 Or 453, 476, 250 P2d 92 (1952) (on proof of the character of use over the statutory period, the "burden of proof resting upon a claimant does not shift in a case of adverse possession; whereas, the burden of proof, that is, the burden of going forward with the evidence, may shift in the case of adverse [prescriptive] user").

not equally conclusive on whether plaintiffs' use was permissive.

Defendants again point to the 1985 easement agreement and argue that it shows permissive use sufficient to defeat any claim by plaintiffs to a prescriptive easement. The easement agreement announced plaintiffs' intent to respect the railroad's ownership of the strip of land. Although that evidence was important for purposes of defeating the required element of hostility for an adverse possession claim because it negated any "subjective intent" by plaintiffs to *own* that same property, *Hoffman*, 329 Or at 561, its legal effect is different with respect to the prescriptive easement claim.

██ ██ In order to prove a prescriptive easement, it is not necessary to show, as is the case for a claim of adverse possession, that the claimant intended to assert ownership of the land. Thus, evidence that refutes any past assertion of complete ownership by the claimant is not dispositive of a prescriptive easement claim. Instead, evidence of a prescriptive easement goes to the manner in which property is *used*— whether the claimant's use is open, continuous, with or without permission of the servient property owner, and in a way that is inconsistent with the owner's use.

██ Property can be used in a manner adverse to its owner's use without disputing legal ownership. In *Hay v. Stevens*, 262 Or 193, 497 P2d 362 (1972), the court held that evidence of deference to the servient owner's title similar to that shown by the easement agreement in this case did not preclude the establishment of prescriptive easements. In that case, the plaintiffs sought to establish prescriptive easements in the form of beach access pathways over the defendants' land. The court found:

> "It is further contended that plaintiffs failed to establish the element of adverseness in the use of the pathways. Defendants rely upon admissions, on cross-examination, made by plaintiff William Hay and his predecessors in title that they did not intend to acquire *ownership* of the pathways and that they would have discontinued using the pathways if defendants had made them stop. These admissions do not negative adverseness of use however; they amount to no more than disavowal by plaintiffs of any claim

> to ownership in the land and recognition by them of the legal authority of defendants to have prevented the use which was being made of their land. A use 'is adverse though made in recognition of the wrongfulness of the use and, also, of the legal authority of another to prevent it.' 5 Restatement of Property (Servitudes) § 458, *comment c*, p. 2926 (1944). A use is adverse if 'not made in subordination' to the person against whom it is claimed to be adverse. *Ibid.*, p. 2924."

*Hay*, 262 Or at 196 (emphasis in original). Therefore, the evidence that plaintiffs recognized the railroad's legal ownership of the strip of land does not establish that their use of the roadway was permissive. Evidence that plaintiffs used the roadway in common with other farmers in the area also did not establish permissiveness as a matter of law. As noted earlier, it is not necessary to show exclusivity in order to prove rights to a prescriptive easement.

■    Thus, defendants presented insufficient evidence to rebut the presumption created by plaintiffs' evidence of open and continuous use of the roadway and to establish that plaintiffs' use was permissive as a matter of undisputed fact. The record does not show whether road was actually constructed on the railroad grade or elsewhere on the properties, when it was built, or who constructed the road. Nor does the record show if or when the railroad used the road before 1959. That type of proof could assist in determining whether the use by plaintiffs and their predecessors was permissive or adverse to the railroad. *Webb*, 205 Or App at 27 (preexisting road, nonexclusive use by claimant, and lack of interference with servient owner's use relevant in rebutting presumption of adverseness); *see also Trewin v. Hunter*, 271 Or 245, 248, 531 P2d 899 (1975) (lack of evidence of who constructed a commonly used road creates presumption "that the servient owner constructed it for his own use" and that the neighbor's use is permissive, not adverse). On the other hand, if plaintiffs, their predecessors in interest, and other farmers in the area built and maintained the road in ways that interfered with the fair market value of the strip of land, those facts would be relevant to prove adverseness to the railroad's investment use of the properties. *Woods v. Hart*, 254 Or 434, 436, 458 P2d 945 (1969) (strong inference of adverse use

when claimant constructed road through the servient property without owner's permission).

Defendants do not dispute that plaintiffs openly used the roadway for over 10 years. Instead, they contend that the open use was insufficiently adverse to defendants and their predecessors in interest to create a prescriptive easement. Because plaintiffs' use was presumed to have been adverse to defendants on that claim, and defendants failed to introduce evidence sufficient to establish permissive use as a matter of law, defendants failed to show that they were "entitled to judgment as a matter of law" under ORCP 47 C on plaintiffs' prescriptive easement claim.

Reversed and remanded on plaintiff's claim for a prescriptive easement; otherwise affirmed.